**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STERLING CURRENCY GROUP, LLC, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| ) | |
| CHELSEA BANK, ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |
| ) | |
| ) | |
| Defendant. ) | |

_____

## COMPLAINT

Plaintiff Sterling Currency Group, LLC ("Sterling" or "Plaintiff") complains against

Defendants Chelsea Bank ("Chelsea" or "Defendant") as follows:

## INTRODUCTION

1.      Defendant, through neglect, misfeasance and/or intentional behavior, allowed

money intended for and belonging to Sterling, an Atlanta-based Money Service Business, to be

deposited or otherwise processed through fraudulent, unauthorized or improperly opened

accounts, all of which caused Sterling to suffer a direct loss of at least $ 1.1 million.

2.      After essentially admitting to Sterling that it is at fault for Sterling's loss, the

Bank has refused to repay Sterling.

## PARTIES

3.      Plaintiff Sterling is an Atlanta-based Money Service Business.  Sterling is a

limited liability company, incorporated under the laws of the State of Georgia with its principal

place of business in Fulton County, Georgia.  Sterling has no office, employees, or other

presence in Massachusetts nor is it registered to do business in Massachusetts.

4.      Defendant Chelsea Bank is a Massachusetts Co-Operative Bank, organized in

Massachusetts, with its principal place of business at 360 Broadway, Chelsea, MA 02150-5687.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action based upon diversity of

citizenship pursuant to 28 U.S.C. § 1332(a)(1) and the fact that the amount in controversy

exceeds $75,000.

6.      This Court has personal jurisdiction over Defendant pursuant to M.G.L. c. 223A,

Section 3.

7.      Defendant is a resident of Massachusetts and has committed the acts complained

of herein, in this Commonwealth.

8.      Venue in the District of Massachusetts is appropriate pursuant to 28 U.S.C. §

1391(b) because Defendant is a resident of Massachusetts and a substantial part of the events or

omissions giving rise to this claim occurred in Massachusetts and/or a substantial part of

property that is the subject of the action is situated in Massachusetts.

## FACTS APPLICABLE TO ALL COUNTS

**Background of Sterling**

9.      Sterling was founded in 2004 by Ty Rhame and Jim Shaw, shortly after Mr.

Rhame, a United States Air Force pilot, had returned from active duty in Iraq during the War.

10.      During his time in Iraq, Mr. Rhame realized the potential of the Iraqi Dinar as an

investment.

11.     Upon his return to the United States, Mr. Rhame teamed with Mr. Shaw, an equities trader and businessman, to start Sterling.

12.     Sterling sells certain foreign currencies not available on established currency exchanges.

13.     Sterling registered with the Treasury Department (FinCEN) as a Money Services Business in 2004 and established an online presence in 2007.

14.     Sterling undergoes regular and rigorous compliance (not tax) audits by the Treasury Department, as well as independent audits from the nation's top compliance organizations.

15.     Sterling prides itself on providing excellent customer service and responsiveness, and is proud of its "A+" rating with the Better Business Bureau.

16.     Sterling's business is a high-volume one with many transactions, most of which are under $500.00 US.

17.     Because of this high-volume business, Sterling regularly hires other businesses to assist it in managing the payments it receives from its customers.

18.     In April 2012, upon the recommendation of Parente Beard, an international consulting firm, Sterling hired Braz Transfers for this purpose.

19.     Braz introduced Sterling to Chelsea Bank and Chelsea Bank represented that it would open banks accounts for Sterling which would be for Sterling's own benefit.

20.     As a result of Chelsea's representatives' dealings with representatives of both Sterling and Braz, Chelsea had actual knowledge that Braz was Sterling's fiduciary in connection with the banking Sterling would do with Chelsea Bank.

21.     Braz began assisting Sterling with processing payments in April 2012.  In
exchange, Sterling paid Braz a monthly fee of $200,000.00, but that fee was later reduced to
$20,000.00.

**Loss From Physical Checks Totaling $840,000.00**

22.     At all times pertinent to this Complaint, Sterling was a customer or believed it
was a customer of Chelsea Bank.  Sterling believed it had a deposit account with Chelsea Bank
with the number 200283878 (the "*78 Account").

23.     Between February 7 and February 22, 2013, Chelsea Bank accepted for deposit
approximately 2,373 checks made payable to Sterling, in fifty-seven (57) batches, totaling
approximately $834,379.36 (the "Checks").

24.     All of these checks were made payable to "Sterling" or "Sterling Currency
Group" or something very similar.

25.     Before submitting the Checks for deposit, Sterling placed on the back of each
check the following restrictive endorsement (the "Original Endorsement"):

> **Pay To The Order Of**
> **Chelsea Bank**
> **Deposit Only**
> **Sterling Currency Group, LLC**
> **Account # 200283878**

26.     Unbeknownst to Sterling and without Sterling's authorization, a second restrictive
endorsement (the "Fraudulent Endorsement") was placed on Sterling's Checks.  The Fraudulent
Endorsement was:

**PAY TO THE ORDER OF**
**Chelsea Bank**
**21137011**
**FOR DEPOSIT ONLY**
**Sterling Currency Group**
**#2002***68**

27.     Instead of depositing the Checks into the *78 Account, as required by the Original

Endorsement, Chelsea Bank allowed the checks to be deposited into a different account, one

numbered 2002***68 (the "Fraudulent Account").

28.     The Original Endorsements and the Fraudulent Endorsements were entirely

inconsistent with each other and the checks should not have been deposited.  And even further,

they should not have allowed to be deposited in accounts that were not authorized to be open by

Sterling.

29.     As a result of Chelsea allowing the fraudulently endorsed checks to be deposited

into the Fraudulent Account, Sterling has suffered damages in the approximate amount of

$840,000.00 principal amount of the Checks, plus consequential damages, interest and legal fees

and costs.

30.     Chelsea Bank was not a holder in due course of the Checks.

31.     Sterling neither authorized nor allowed – either explicitly or implicitly – anyone

to place the Fraudulent Endorsements on the Checks.

32.     Sterling neither authorized nor allowed — either explicitly or implicitly —

anyone to open the Fraudulent Account or any other account that was not for the sole benefit of

Sterling.

33.     Sterling neither authorized nor allowed —either explicitly or implicitly— anyone to deposit instruments into the Fraudulent Account or into any other account that was not for the sole benefit of Sterling.

34.     Chelsea Bank took steps to deceive Sterling into believing that accounts solely for Sterling's benefit were opened at the Bank when, in fact, that was not true.

**Loss From eChecks Totaling $309,085.00**

35.     Aside from physical checks, as discussed above, Sterling accepted payments from its customers through electronic (ACH) payments, also called eChecks.

36.     To make an eCheck payment, a Sterling customer would simply place an order on Sterling's website and enter his or her bank account and routing number in an online form. Clicking the "send" button would then initiate the eCheck payment.

37.     Sterling used Braz to assist Sterling in processing eChecks Sterling received from its customers.

38.     Chelsea Bank allowed eChecks from Sterling's customers to be deposited in an unauthorized account or accounts at Chelsea Bank.  Due to that, toward the end of March 2013, at least $309,000.00 of such eChecks were never deposited into an actual Sterling account nor otherwise delivered to Sterling.

39.     At all pertinent times, Chelsea owed Sterling a duty to act in a commercially reasonable fashion, with ordinary care, and to observe reasonable commercial standards of good faith and fair dealing.

### COUNT I
### Conversion of Checks and eChecks (M.G.L.A. 106 §§ 3-420 and 3-206)

40.     Plaintiff repeats the foregoing allegations as if fully set forth herein.

41.     Sterling received delivery of Checks and eChecks from its customers.

42.     Sterling has, and at all times pertinent hereto has had, a right to immediate possession of such Checks, eChecks, and the proceeds thereof.

43.     Chelsea Bank has unlawfully and wrongfully misappropriated the proceeds due to Sterling, and instead has exercised dominion over them inconsistent with Sterling's rights.

44.     Chelsea Bank's acceptance of the Checks and eChecks for deposit or otherwise, and its refusal to return the proceeds thereof, constitute an unauthorized appropriation of the Funds.

45.     Sterling has demanded that Chelsea return the proceeds of the Checks and eChecks and Chelsea has refused.

46.     Defendant's conversion has caused, is continuing to cause and threatens to cause Sterling to suffer substantial damages in an amount to be determined at trial.

## COUNT II
## Rescission (M.G.L.A. 106 § 3-306)

47.     Plaintiff repeats the foregoing allegations as if fully set forth herein.

48.     As more fully set forth herein, the Checks and eChecks are instruments which, when presented to Chelsea Bank, bore apparent evidence of forgery or alteration and/or otherwise were so irregular or incomplete as to call into question their authenticity.

49.     As set forth more fully herein, the Checks and eChecks, the circumstances in which they were presented to Chelsea and the circumstances surrounding the opening of the Accounts, placed or should have placed Chelsea on notice that the Checks and eChecks contained an unauthorized endorsement and/or had been altered.

50.     Chelsea is not and never has been a holder in due course of the Checks and eChecks.

51.     Defendant's conduct has caused, is continuing to cause and threatens to cause Plaintiff to suffer substantial damages in an amount to be determined at trial.

52.     Sterling is entitled to rescind Chelsea's negotiation of the Checks and eChecks and entitled to receive the proceeds of the Checks and eChecks from Chelsea.

### COUNT III
### Money Had and Received

53.     Plaintiff repeats the foregoing allegations as if fully set forth herein.

54.     Chelsea has received money belonging to Sterling, namely, the proceeds of the Checks and eChecks.

55.     Equity and good conscience require that Chelsea Bank not be permitted to keep such money.

### COUNT IV
### Negligence

56.     Plaintiff repeats the foregoing allegations as if fully set forth herein.

57.     Defendant owed a duty to Plaintiff to act in a commercially reasonable manner with respect to Sterling's accounts with Chelsea and with respect to the Check s and eChecks.

58.     Through their conduct described herein, including but not limited to, accepting the Checks and Checks and opening and maintaining one or more fraudulent account, misappropriating the Funds and otherwise defrauding Plaintiff, Defendant breached their duty to Plaintiff.

59.     As described herein, Chelsea failed to act in good faith in paying the Checks and eChecks, in taking them for value and/or for collection, and in opening and maintaining one or more unauthorized or fraudulent account.

60.     Defendant's breach, has caused, is continuing to cause and threatens to cause Plaintiff to suffer substantial damages in an amount to be determined at trial.

**COUNT V**
**Violation of M.G.L.A. 106 § 3-307**

61.     Plaintiff repeats the foregoing allegations as if fully set forth herein.

62.     Sterling was represented by Braz and Chelsea Bank had actual knowledge of that fiduciary relationship.

63.     Instruments payable to Sterling were taken from Braz for value by Chelsea Bank and deposited into an account which was not for Sterling's benefit.

64.     Chelsea Bank had knowledge of Braz's breach of its fiduciary duty to Sterling.

65.     Chelsea Bank is liable to Sterling under M.G.L.A. 106 § 3-307.

**COUNT VI**
**Fraud**

66.     Plaintiff repeats the foregoing allegations as if fully set forth herein.

67.     As more fully set forth herein, Defendant has repeatedly, knowingly and intentionally made material misrepresentations to Plaintiff, to induce Plaintiff to use their Services, and in employing those Services to steal the proceeds of the Checks and eChecks from Sterling.

68.     Chelsea Bank representatives told Sterling representatives that it was opening a bank account for Sterling.  This was an intentional misrepresentation which at least one Chelsea Bank representative knew was false.

69.     Chelsea Bank representatives also told Sterling representatives that it was opening a bank account for Sterling which account would be for Sterling's sole benefit.  This was an intentional misrepresentation which at least one Chelsea Bank representative knew was false.

70.     Sterling reasonably relied on Defendant's misrepresentations to its detriment.

71.     Defendant's fraud has caused, is continuing to cause and threatens to cause Plaintiff to suffer substantial damages in an amount to be determined at trial, but of at least $1,149,085.00.

WHEREFORE, Plaintiff Sterling requests that the Court:

1.     Enter judgment in Plaintiff's favor on all counts and award damages in an amount to be determined at trial, plus prejudgment and post-judgment interest;

2.     Award Plaintiff its attorneys' fees, interest and costs; and

3.     Grant such other relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

STERLING CURRENCY GROUP LLC,
By its attorneys,


___/s/David B Mack_____
David B. Mack, Esq. (BBO # 631108)
dmack@ocmlaw.net
Stephanie R. Parker, Esq. (BBO# 687610)
sparker@ocmlaw.net
O'Connor, Carnathan and Mack LLC
Landmark One
1 Van De Graaff Drive
Suite 104
Burlington, Massachusetts 01803
Tel. 781-359-9000

Of counsel:

David M. Lilenfeld, Esq.
(*pro hac vice application forthcoming*)
david@lilenfeldpc.com
Lilenfeld PC
Buckhead Centre
2970 Peachtree Road N.W., Suite 530
Atlanta, GA 30305
(t) 404.201.2520
(f) 404.393.9710


Dated: April 22, 2015



4827-0425-7059, v. 1